**In re Steven A. AMBURGEY,
Alleged Debtor.**

**Bankruptcy No. IP85–1671 RA S.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Jan. 5, 1987.

---

Steven A. Amburgey, pro se.

Michael W. Hile, Indianapolis, Ind., for Steven A. Amburgey.

W. Lynn Short, pro se.

Edward B. Hopper, Indianapolis, Ind., for W. Lynn Short.

Charles E. Waggoner, Indianapolis, Ind., pro se.

Joseph B. Barker, Martinsville, Ind., for Rita Austin.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON INVOLUNTARY PETITION FOR RELIEF

NICHOLAS W. SUFANA, Bankruptcy Judge.

W. Lynn Amburgey, now Lynn Short (hereinafter referred to as "Short"), filed her involuntary petition against Steven A. Amburgey ("Amburgey") on April 22, 1985. In that petition, Short alleged that Amburgey had fewer than twelve creditors and that she held an unsecured claim against him which exceeded $5,000.00 and was not contingent.

Amburgey filed a Motion to Dismiss the involuntary petition on June 19, 1985. In that motion he alleged that he had more than twelve creditors and that Short did not have any unsecured claim against him.

The motion to dismiss was set for hearing on August 13, 1985. On June 26, 1985, Amburgey filed his Amended Motion to Dismiss, which added more creditors to his list of creditors. Amburgey also requested a continuance of the August 13th hearing

date. The matter was continued to September 10, 1985.

On September 9, 1985, Short responded to the amended motion to dismiss, and noted that Amburgey had failed to file all of the information about his creditors required by Bankruptcy Rule 1003. Short also contended that the motion to dismiss essentially raised defenses to the involuntary petition.

Both Amburgey and Short requested a continuance of the September 10th hearing.

Then on July 30, 1986, Amburgey filed a voluntary petition under Chapter 7 of the Bankruptcy Code. That case is pending before this Court under Case Number IP86–4452 (hereinafter referred to as "the voluntary case"). On August 8, 1986, Short filed in the voluntary case a motion to dismiss or abstain because of the pending involuntary.

All pending matters in both this involuntary case and the voluntary case were set for hearing on November 6, 1986. Amburgey appeared in person and by counsel Michael W. Hile. Short appeared in person and by counsel Edward B. Hopper. Charles E. Waggoner ("Waggoner") also appeared in person and requested that he be added as a petitioning creditor. Rita Austin ("Austin") also appeared by counsel Joseph B. Barker and requested that she be added as a petitioning creditor.

At the close of the hearing, the Court requested Amburgey and Short to present proposed findings of fact and conclusions of law. The parties have since complied with that request. This entry discusses only the issues raised in the involuntary case. A separate order shall be entered in the voluntary case.

The Court, having reviewed the evidence and the record, now makes the following findings of fact:

### Findings of Fact

1. On April 22, 1985, Amburgey and Short were still husband and wife, although in 1984 Short had filed in the Marion County Superior Court to dissolve the marriage.

2. The Marion County Superior Court hearing the dissolution entered a preliminary order on October 26, 1984, which directed Amburgey to pay certain joint debts he owed with Short. The preliminary order was not submitted into evidence, but it apparently ordered Amburgey to pay the following: Indiana National Bank ("INB") in the approximate sum of $5,000.00, for the deficiency on a Buick Riviera automobile financed and repossessed by INB; Home Building Association ("HBA") for a real estate contract on which approximately $32,000.00 was owing; and Mastercard, in the approximate sum of $650.00. Amburgey was not ordered to pay any sums directly to Short.

3. Either in the preliminary order or in a subsequent order of the Marion County Superior Court which preceded April 22, 1985, Amburgey was ordered to pay Waggoner, Short's divorce counsel, the sum of $175.00. That amount was not paid until some time after April 22, 1985.

4. Short asserts that prior to April 22, 1985, she paid certain sums to HBA when Amburgey failed to obey the preliminary order of the dissolution court. However, Short offered no proof of such payment, other than her testimony and the testimony of Waggoner. (Where are the cancelled checks or receipts?)

5. Austin had filed a claim in Morgan County Court on March 21, 1985, seeking delivery of title to a mobile home and $500.00 in damages from Amburgey. Amburgey never answered that complaint, and after Austin filed an amended claim, default judgment was entered against Amburgey on May 10, 1985, for $1,035.00.

6. The evidence establishes that as of April 22, 1985, Amburgey had more than twelve creditors. Those creditors included the following:

Walker & Weber, CPA, for $337.50;

Indiana Bell Telephone Co. for $66.13;

Indianapolis Power and Light Co. for $32.36;

Sears Roebuck & Co., amount unspecified;

General Motors Acceptance Corp., amount unspecified;

IPL Credit Union, amount unspecified;

First National Bank of Martinsville, amount unspecified;

Homestead Mortgage, amount unspecified;

Farm Bureau Insurance and State Farm Insurance, amounts unspecified;

Shannie Bibie, his divorce counsel, amount unspecified;

Evelyn Amburgey, amount unspecified, for child support.

(Short has correctly noted that Amburgey failed to comply with Bankruptcy Rule 1003(d) in that he alleged the existence of twelve or more creditors and provided their names but no addresses or amounts. However, Short could have used Bankruptcy Rule 1012(a) to discover more information about these creditors. Even though these creditors apparently were not notified of the involuntary petition and given the opportunity to join therein, as required by Rule 1003(d), this oversight has no net effect on the Court's decision, as will become apparent below.)

7. On April 22, 1985, Amburgey was employed by Indianapolis Power and Light Company as a control board operator at one of the company's generating facilities. In 1985, he earned approximately $33,-000.00 from such employment. However, in early 1986 Amburgey resigned his position to pursue a career as a realtor, and had earned approximately $18,000.00 from January 1, 1986, to the date of the hearing.

8. On April 21, 1986, the Marion County Superior Court dissolved the marriage of Amburgey and Short, and in that order directed Amburgey to pay Waggoner $2,200.00 towards Short's attorney's fees.

Whereupon, the Court now enters the following conclusions of law:

## Conclusions of Law

1. This Court has jurisdiction over the parties. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and the General Order of Referral from the United States District Court for the Southern District of Indiana dated July 11, 1984.

2. 11 U.S.C. § 303 governs involuntary bankruptcy petitions. In determining the propriety of an involuntary petition, the Court must first determine the number of entities holding claims against the alleged debtor. The crucial number is twelve. If there are fewer than twelve claimants, only one such claimant needs to petition for bankruptcy relief. If there are twelve or more claimants, at least three of them must petition for relief.

3. Here, the evidence shows that Amburgey had more than twelve creditors as of April 22, 1985, the operative date. The Court must now determine if three claimants have petitioned for relief, and then must analyze each claim to see if it is contingent or disputed. Finally, the Court must determine whether the undisputed, non-contingent claims "aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims." 11 U.S.C. § 303(b)(1). Only after first establishing the claimants' credentials can the Court consider whether the alleged debtor is generally not paying debts as they become due and enter an order for relief. 11 U.S.C. § 303(h).

4. "Claim" is defined in 11 U.S.C. § 101(4), and includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." Since Amburgey has disputed the existence of all three claims, the claimants have the burden of establishing the existence of their claims. *In re: Alta Title Co.*, 55 B.R. 133 (Bankr.D.Utah 1985).

5. Waggoner contends he had a claim against Amburgey as of April 22, 1985, since Amburgey had been ordered by the state court to pay Waggoner $175.00. That state court order was not placed in evidence, but Amburgey did not truly dis-

pute its existence. Amburgey thought he had paid such sum prior to April 22, 1985, but he offered no evidence to refute Waggoner's contention that he had not made such payment. While Waggoner did not join in the petition at the outset, he joined at the hearing, and pursuant to 11 U.S.C. § 303(c) such joinder has the same effect as if he had joined at the outset.

6. "Claim" also includes a "right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment ..." 11 U.S.C. § 101(4)(B). Austin was pursuing just such an equitable remedy prior to April 22, 1985. Counsel for Amburgey suggested that Amburgey disputed Austin's claim for money damages, but offered no testimony or other evidence of such dispute. Further, Amburgey apparently did not dispute Austin's contention that he was to surrender title to a mobile home to her. Amburgey has not shown that Austin's claim was disputed or contingent, and therefore Austin's claim can be counted towards the number required by 11 U.S.C. § 303(b)(1).

7. Amburgey disputes Short's contention that she had a "claim" against him as of April 22, 1985, and notes that the Marion County Superior Court never ordered Amburgey to pay Short any sums directly. Amburgey agreed that she was a joint obligor with him on the contract debts owed INB and HBA but disputed her contention that she made several payments to HBA before April 22, 1985. All the Court has before it is conflicting testimony. The preponderance of the evidence before the Court does not establish that Short had made payments to HBA.

8. Even if Short had made such payments, the evidence does not establish that those payments gave Short a "claim" against Amburgey as of April 22, 1985. Counsel for Short did not present any theory to establish that the payments gave rise to a "claim," but two possible theories exist: right to contribution and subrogation.

9. A joint contract debtor has a right to contribution from the contract co-debtor. That right to contribution does not arise at the time the contract is entered, but only after the first co-debtor has paid the debt or more than a proportionate share thereof. *Estate of Leinbach v. Leinbach,* 486 N.E.2d 2 (Ind.App.1985); *Judd v. Small,* 107 Ind. 398, 8 N.E. 284 (Ind.1886). The right also arises where the co-debtor executes a new note to the creditor on which that co-debtor alone is liable. *McLochlin v. Miller,* 139 Ind.App. 443, 217 N.E.2d 50 (1966).

10. A right to contribution, since it is a right to payment, constitutes a "claim" within the meaning of 11 U.S.C. § 101(4). Here, Short may have had a right to contribution as to the sums she had paid HBA prior to April 22, 1985. Had she paid more than her equitable portion of the joint debt? The Court cannot determine from the evidence before it. Perhaps the preliminary order of the Marion County Superior Court constitutes a determination that equity required Amburgey to pay the remainder of the obligation to HBA. However, this Court cannot rely on such speculation.

11. Aside from her right to contribution, Short also may have become subrogated to the rights of HBA to the extent that she paid monthly installments Amburgey had been ordered to pay. However, the general rule is that the right to subrogation does not exist unless the whole debt has been paid. 83 *C.J.S.* "Subrogation," Section 10, p. 608 (1953); *Willard v. Automobile Underwriters, Inc.,* 407 N.E.2d 1192 (Ind.App.1980). In *Carithers v. Stuart,* 87 Ind. 424 (1882), the Indiana Supreme Court determined that a married woman, who had joined her husband in a mortgage of his lands to secure installment promissory notes, would not be subrogated to the rights of the mortgage holder after she paid only the first installment.

12. *Pro tanto* subrogation, or subrogation before the debt has been satisfied, has been allowed in situations where a joint debtor discharges more than his or her proper share of a joint debt. 83 *C.J.S.* "Subrogation," Section 17, p. 618 (1953). However, this Court finds no Indiana case law allowing such *pro tanto* subrogation

absent a contract. Again, as with contribution, the Court here would have to first determine whether Short has paid more than her equitable share of the debt to HBA, a determination which cannot be made given the evidence presented.

13. Even if Short had convinced this Court that she made the payments to HBA before April 22, 1985, she failed to establish a "claim" against Amburgey resulting from those payments. The question is not whether Short's right to payment was unliquidated, unmatured, or contingent as of April 22, 1985, for if it were merely unliquidated, unmatured, or contingent, she would still have a claim for the purposes of 11 U.S.C. § 101(4). The question is, given the law of subrogation and the right to contribution as discussed above, whether Short had any right to payment at all as of April 22, 1985. Short did not present sufficient evidence to establish that her right to payment existed as of April 22, 1985.

14. The involuntary petition lacks three holders of claims which are not disputed or contingent as to liability. Therefore, the involuntary petition is improper and should be dismissed.

15. Even if Short were a claimant and could join in the petition, the three claimants here would fail the requirement that their claims total at least $5,000 more than the value of any security held by the claimants. Waggoner only had an unsecured claim for $175.00 as of April 22, 1985. He had some expectation that he would ultimately be awarded a larger sum, and in fact he was. However, on April 22, 1985, that larger sum was "contingent:" the debt was one which Amburgey would be called upon to pay only upon the occurrence of an extrinsic event, namely, the award of fees by the Marion County Superior Court. *Armstrong v. Corn Belt Bank,* 55 B.R. 755 (C.D.Ill.1985).

16. The dollar amount of Austin's claim as of April 22, 1985, is hard to determine. The claimants presented no evidence which would allow this Court to value it any higher than the ultimate judgment amount of $1,035.00.

17. If indeed Short had a claim as of April 22, 1985, it totalled at most only the amounts she had paid to HBA. Short did not even assert an exact dollar amount she allegedly paid to HBA prior to April 22, 1985. She suggested at most that she had made a few monthly payments of approximately $356.00. Presuming Short established her claim, aggregating the three claims does not produce a $5,000.00 total, without any consideration of the security which Short would have if she were subrogated to the claim of HBA.

18. Since the involuntary petition lacks the requisite number of claimants, Short may contend that the claimants who have not been notified of the involuntary should be notified and given the right to intervene, as required by Bankruptcy Rule 1003(d). The Court will not now notify those claimants. Even if the involuntary petition had been brought by three claimants whose unsecured claims exceeded $5,000.00, this Court would not have entered an order for relief.

19. By their petition, the creditors seek to place Amburgey, an individual, in a Chapter 11 reorganization. Once in that Chapter 11, Amburgey would not be able to convert the case to Chapter 7 on his own motion. *Matter of Winn,* 49 B.R. 237 (Bankr.M.D.Fla.1985); 11 U.S.C. § 1112(a)(2).

20. The Court has difficulty coercing compliance with the provisions of Chapter 11 from debtors who have sought relief under the Chapter voluntarily. This Court shudders to contemplate the difficulty it would encounter with a reluctant Chapter 11 debtor. The appointment of a Chapter 11 trustee would be of little assistance to the Court. There is no business for a trustee to manage. From the evidence before the Court, including Amburgey's schedule of assets in his voluntary case, it appears that the plan would be funded solely from Amburgey's future income.

21. Congress refused to allow involuntary Chapter 13 petitions because "Short of

involuntary servitude, it is difficult to keep a debtor working for his creditors when he does not want to pay them back." House Report No. 95–595, 95th Cong., 1st Sess. 321 (1977), Senate Report No. 95–989, 95th Cong., 2d Sess. 33 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5819, 6277. Many courts have lingering doubts about the propriety of allowing individuals to file under Chapter 11 when they do not own or operate a business. See *Wamsganz v. Boatmen's Bank of De Soto*, 804 F.2d 503 (8th Cir.1986).

22. As a matter of policy, this Court now determines that a bankruptcy court should not entertain involuntary petitions under Chapter 11 against individuals who do not own a business or significant property which could be administered by a trustee. Given this policy, the Court will not now notify Amburgey's other creditors to determine if they are interested in joining the involuntary petition.

23. Amburgey has requested his costs, attorneys fees, and damages pursuant to 11 U.S.C. § 303(i)(1) and (2). The award of fees, costs, and damages upon the dismissal of an involuntary is wholly discretionary with the Court. *In re Nordbrock*, 772 F.2d 397 (8th Cir.1985).

24. While Amburgey intimated that Short filed the petition in bad faith, he failed to sustain his burden of proof. The petitioning creditor has the advantage of a presumption of good faith, and the alleged debtor must show bad faith by a preponderance of the evidence. *In re CLE Corp.*, 59 B.R. 579 (Bankr.N.D.Ga.1986). Amburgey has not shown any bad faith, and no trustee ever took possession of any of his property, and therefore he is not entitled to recover actual or punitive damages.

25. As for Amburgey's attorneys fees and costs, this Court acknowledges that such fees and costs can be awarded absent a showing of bad faith. However, where the alleged debtor has delayed the expedited treatment which an involuntary petition for relief demands, no such award of fees or costs is warranted. Here Amburgey

acquiesced in the several continuances, and this case languished for almost one and a half years. In the meantime, Amburgey further obfuscated the issues by filing his own Chapter 7 petition while this involuntary was still pending. While the Court shall dismiss the involuntary petition, it will not award any costs or fees to Amburgey.