**In re David J. ROSS, Stephanie Ross, Debtors.**

**Bankruptcy No. 90–15389F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 30, 1991.

William Ewing, Hangley Connolly Epstein, Chico Foxman & Ewing, Philadelphia, Pa., for alleged debtors.

Leonard J. Bucki, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for petitioning creditors.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Before me is a motion styled "Alleged Debtors' Motion for an Award of Fees and Expenses." The motion arises from an involuntary petition filed on December 27, 1990 against the movants by three entities: Robert Duffany, Trustee of Roberts Associates, Inc. Pension Plan; Jaffe & Co., P.C.; and, Jaffe & Co., P.C. Employee Pension & Profit Sharing. The movants request an award of attorney's fees and costs against all three petitioners, pursuant to 11 U.S.C. § 303(i)(1), in the amount of $38,993.68. This motion is opposed by the three respondents.

### I.

The facts surrounding this motion are somewhat unusual.

As I mentioned above, the three respondents filed an involuntary bankruptcy petition against the movants under chapter 7 on December 27, 1990. The movants then

filed an answer in opposition along with a counterclaim. In their answer, the movants asserted, *inter alia*, that the petitioners had claims subject to bona fide dispute, that the movants were paying their debts when due, and that they had more than eleven creditors. *See generally* 11 U.S.C. §§ 303(b)(1), (h)(1). Their counterclaim sought fees and damages under 11 U.S.C. § 303(i).

After a pretrial conference on the merits of the involuntary petition, the issues began to narrow. The movants conceded that they were not paying their debts when due, that the petitioning creditors held more than $5,000.00 in unsecured claims, and that Mrs. Ross was a joint obligor on the petitioning claims. The movants still contested the involuntary petition though, contending that the two Jaffe petitioners were only one creditor and that this sole creditor held a claim subject to a bona fide dispute. All parties agreed that the debtor had twelve or more creditors.

At the scheduled trial on the involuntary, counsel for the petitioners conceded for the first time that only Duffany and Jaffe & Co., P.C. held any claim against the movants. As there were twelve or more creditors, thus necessitating three or more petitioners, 11 U.S.C. § 303(b)(1), *see, e.g., In re Gilbert*, 115 B.R. 458, 461 (Bankr. S.D.N.Y.1990), this concession meant that the involuntary petition could not be granted since there was, at most, only two valid petitioners. Rather than dismiss the involuntary case, the petitioners requested that the debtors be directed to file a list of creditors as set out in Bankr.R. 1003(b), with those listed creditors given a certain period of time to intervene in the involuntary case.

By memorandum and order dated May 9, 1991, I denied the petitioners' request. In essence, I concluded that Rule 1003(b) did not apply under the facts presented and that the petitioners had ample time and knowledge—Mr. Jaffe was the debtors' former accountant—to solicit other creditors to join their involuntary petition prior to trial. Accordingly, the involuntary case was dismissed. At the trial, the movants

did not offer evidence upon nor argue their counterclaim, so I made no ruling upon it.

The docket entries of this case reflect that my order of dismissal was entered on May 9, 1991 and, on May 22, 1991, the petitioners filed a motion to strike the movants' praecipe for a hearing on their counterclaim. This suggests that the movants filed a praecipe for a hearing on their counterclaim shortly after the case was dismissed, even though such a praecipe does not appear on the docket. The docket entries do not disclose any action on the praecipe or the motion to strike it. The case was marked closed on June 19, 1991.

On July 12, 1991, the movants filed a motion to reopen the involuntary case so that a hearing on their counterclaim under section 303(i) could be heard. This motion was opposed by the petitioners and a hearing was held on August 14, 1991. At that hearing I learned that the movants had filed a voluntary petition in bankruptcy in the Southern District of Florida on August 7, 1991. As I did not know whether parties in interest in the Florida bankruptcy case were aware of the movants' attempt to reopen an earlier case, nor was it clear that the movants could have two bankruptcy cases open simultaneously, I denied the motion to reopen without prejudice.

A motion was filed in the Florida voluntary bankruptcy to transfer the case to this district, pursuant to 28 U.S.C. § 1412, and an order was so entered by that court. Accordingly, the movants' voluntary bankruptcy in chapter 11 was assigned to me. I then held a hearing on the movants' instant motion.

At the hearing the movants made it clear that they seek only attorney's fees and costs under section 303(i)(1), and do not seek any damages under section 303(i)(2). Furthermore, they agree with the respondents that any award of fees and costs would become a part of their bankruptcy estate in the voluntary chapter 11 and is not payable directly to their counsel in the involuntary petition. *See In re Better Care, Ltd.*, 97 B.R. 405, 415 (Bankr.N.D.Ill. 1989). *But see In re Schiliro*, 72 B.R. 147 (Bankr.E.D.Pa.1987).

This last concession eliminates any complications over the extent of the debtors' bankruptcy estate in their voluntary case. Since Bankr.R. 6009 allows a chapter 11 debtor in possession the right to initiate or continue litigation on its behalf postpetition in a non-bankruptcy forum, *see generally In re White*, 851 F.2d 170, 172 (6th Cir. 1988), this motion in essence becomes such litigation. Any funds collected would be part of the debtors' estate; furthermore, counsel for the movants has not sought to be compensated from the debtor's estate for litigating the instant motion, so their creditors could not be prejudiced by the prosecution of the motion.

## II.

Before turning to the merits of the motion, I must address the respondents' contention that the movants' request for fees and costs were waived by their failure to press their counterclaim prior to dismissal of the involuntary petition. There has been confusion as to the appropriate procedure and timing for a debtor to seek an award under subsection 303(i).

Clearly, the statute states that such an award can only be granted after the involuntary petition has been dismissed. Furthermore, Bankr.R. 1011(d) limits the scope of a debtor's answer to an involuntary petition to those issues which address the merits of granting the involuntary relief. Indeed, Bankr.R. 1011(e) prohibits any other response from the debtor. As a request for counsel fees under section 303(i) would not affect the merits of the involuntary petition, some courts have dismissed counterclaims under subsection 303(i) as premature. *See, e.g., In re Contemporary Mission, Inc.*, 30 B.R. 369 (Bankr.D.Conn. 1983). One treatise implies that the counterclaim should be dismissed without preju-

dice. 2 *Collier on Bankruptcy*, ¶ 303.27 (15th ed. 1991).

Given the language of the statute, a bankruptcy court must first order the dismissal of an involuntary petition prior to reaching any issues under section 303(i). Whether under subsection 303(i) this relief may be pled in the debtors' answer, I need not now decide. I have the jurisdiction to consider an award under section 303(i) after dismissal. *Accord, e.g., In re Cooper School of Art, Inc.*, 709 F.2d 1104 (6th Cir.1983); *In re Godroy Wholesale Co., Inc.*, 37 B.R. 496, 498 (Bankr. D.Mass.1984). And I conclude that, in this instance, it is appropriate to exercise that power, and that the movants did not waive their right to relief by not placing any evidence of record regarding fees prior to the entry of the order dismissing the involuntary petition. They have consistently sought recovery of fees both before and after this involuntary case was dismissed. *See Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47 (3d Cir.1988) (debtor did not waive damage claim stemming from involuntary petition).

## III.

This conclusion requires that I consider the instant motion on its merits. Subsection 303(i)(1)[1] states that upon dismissal of an involuntary petition, a bankruptcy court *may* award attorney's fees against the petitioning creditors and in favor of the debtor. Clearly, the grant of such an award is discretionary. In this instance, the respondents contend that it would be inappropriate to award any fees to the movants. The question therefore becomes how did Congress intend for courts to exercise the discretion provided by subsection 303(i)(1)? In addition, what evidentiary burden must

---

1. Section 303(i) of the Bankruptcy Code is as follows:

   (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
   
   (1) against the petitioners and in favor of the debtor for—

   (A) costs; or
   (B) a reasonable attorney's fee; or
   (2) against any petitioner that filed the petition in bad faith, for—
   (A) any damages proximately caused by such filing; or
   (B) punitive damages.

be met to justify the award or disallowance of such fees?

Obviously, the language of the statute is the first source for its interpretation. *Accord, e.g., Union Bank v. Wolas,* —— U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991); *Velis v. Kardanis,* 949 F.2d 78 (3d Cir. 1991). Unfortunately, the statute itself provides no framework or list of factors Congress expected courts to consider in the exercise of their discretion. *See In re Reid,* 854 F.2d 156 (7th Cir.1988). Therefore, I turn to the interesting origins of this subsection as they shed some insight on the interpretation of this statutory provision.

### A.

Under the Bankruptcy Act of 1898, involuntary petitions could be filed and contested. Former 11 U.S.C. §§ 21, 41. *See generally* Henderson, 1 *Remington on Bankruptcy,* §§ 283, *et seq.* (5th ed. 1950). For many years, if such a petition were dismissed, then costs but not attorney's fees could be awarded, there being no statutory provision for such an award of fees. *Accord In re Ghiglione,* 93 F. 186 (S.D.N.Y. 1899); Henderson, 6 *Remington on Bankruptcy,* § 2696 at 245 (5th ed. 1952); *Loveland on Bankruptcy,* §§ 41a, 94a, at 165, 290 (3d ed. 1907). The sole statutory exception to this broad principle was found in section 3(e) of the 1898 Act, (later former section 69(b) of the Act, former 11 U.S.C. § 109(b) [2]), which permitted debtors to be awarded attorney's fees when the petitioning creditors directed the bankruptcy court to seize the debtor's property prior to any ruling on the propriety of the involuntary petition. *E.g. In re Abraham,* 93 F. 767, 785 (5th Cir.1899); *In re Ghiglione.* Absent such a seizure, counsel fees generally were not allowable. *See In re Wilkes-*

*Barre Hotel Co.,* 17 F.Supp. 875 (M.D.Pa. 1937).

In 1973, the Supreme Court promulgated Bankr.R. 115 which may have caused a substantive change in the law. Subsection 115(e) of the procedural rule stated:

> When a case commenced by the filing of a petition against any person pursuant to Rule 104(a) or Rule 105(b) or (c) is dismissed or withdrawn, the court on reasonable notice to the petitioner or petitioners may award to the prevailing party the same costs that are allowed to a prevailing party in a civil action and reasonable counsel fees, and shall award any other sums required by the Act.

The Advisory Committee Note to subdivision (e) explained in relevant part:

> Subdivision (e) embodies the substance of the last clause of General Order 34, authorizing recovery of costs by the debtor in the event of dismissal, and recognizes the right of the alleged bankrupt under 69b of the Act to costs, counsel fees, and indemnification for expenses and damages caused by the action of a receiver or marshal in taking or holding his property. An award may be made under this subdivision in the event of a dismissal on account of a withdrawal of the petition as well as by reason of an involuntary dismissal.

One of the first decisions to discuss this rule came from this district. *In re Eastern Erectors, Inc.,* 396 F.Supp. 797 (E.D.Pa. 1975). Upon dismissal of an involuntary petition due to a finding under the Bankruptcy Act that the debtor was not insolvent, the bankruptcy court awarded counsel fees pursuant to former 11 U.S.C. § 11(a)(18).[3] On appeal, the district court considered the bankruptcy court's power to

---

**2.** Former 11 U.S.C. § 109(b) stated:

(b) If the petition for adjudication be dismissed, or withdrawn by the petitioners, the court shall fix and allow to the bankrupt, to be paid by the obligors on such bond, the costs, counsel fees, expenses and damages occasioned by such seizure, taking or detention of his property, in the manner provided by section 50, subdivision (n) of this Act.

**3.** This former statutory provision read:

The courts of the United States hereinbefore defined [in former 11 U.S.C. § 1] as courts of bankruptcy ... are hereby invested, ... with such jurisdiction at law and in equity as will enable them to— ... tax costs and render judgments therefor against the unsuccessful party, against the successful party for cause in part against each of the parties, and against estates, in proceedings under this Act.

award fees and noted that section 69(b) offered no support for counsel fees, since there had been no preliminary seizure of the debtor's property. Furthermore, it noted that section 2(a)(18), former 11 U.S.C. § 11(a)(18), would not support an award of counsel fees since it referred only to awarding "costs". Fees are not considered costs of suit.

The district court then discussed an exception to the general rule, developed by caselaw, which permitted the award of attorney's fees upon a showing of bad faith by the petitioning creditors. *Id.,* at 801.[4] As that exception was inapplicable to the facts at hand, the court then turned to Rule 115(e).

Although it ultimately concluded that the provisions of the rule were inapplicable, since that rule was promulgated after the filing of the involuntary case *sub judice,* the district court interpreted Rule 115(e) as expanding the notion of "costs" under section 2(a)(18) to include counsel fees. It cited with approval 1 *Collier on Bankruptcy,* ¶ 2.70 at 377 (14th ed. 1975) which stated:

> Bankruptcy Rule 115(e) brings a new dimension to the concept of costs. If an involuntary petition is dismissed, the court may on reasonable notice to the unsuccessful petitioner award the same costs as are allowable to a prevailing party in a civil action, *including reasonable counsel fees.*

(citation to the Advisory Committee Note omitted) (emphasis in original). The district court in *Eastern Erectors* noted the issue, without deciding, whether a procedural rule could validly make this substantive change in the law. 396 F.Supp. at 802 n. 8.

The *Eastern Erectors* decision was discussed in *In re Howard, Neilsen & Rush, Inc.,* 2 B.R. 451 (Bankr.M.D.Tenn.1979). After earlier concluding that an involuntary petition must be dismissed, the bankruptcy court then determined that the peti-

tioners had not acted in bad faith. It nonetheless awarded attorney's fees pursuant to Bankr.R. 115(e), with the explanation that "Rule 115(e) contemplates a *routine* award of costs and counsel fees to the prevailing party upon dismissal or withdrawal of an involuntary petition." *Id.* at 454 (emphasis in original).

### B.

Against this background, I now turn to subsection 303(i).

The two components of subsection 303(i) demonstrate that attorney's fees may be awarded even in the absence of the bad faith of the petitioners in an involuntary case. *In re Reid,* 854 F.2d 156 (7th Cir. 1988). *See also In re Advance Press & Litho, Inc.,* 46 B.R. 700, 702 (D.Colo.1984); *In re McDonald Trucking Co., Inc.,* 76 B.R. 513, 516 (Bankr.W.D.Pa.1987); *In re Camelot, Inc.,* 25 B.R. 861, 865 (Bankr. E.D.Tenn.1982). If attorney's fees were limited to bad faith filings, then the fee provision would be found not in subsection 303(i)(1) but in subsection 303(i)(2). *In re Reid,* 854 F.2d at 160. Furthermore, as only a portion of former Bankr.R. 115 was retained as a procedural rule after the enactment of the Bankruptcy Code, current Bankr.R. 1013, it follows that subsection 303(i)(1) was likely codifying former Rule 115(e). *Accord Hearings Before the House Subcommittee On Civil and Constitutional Rights Concerning H.R. 31 and 32,* Bankruptcy Revision Act, 94th Cong. 1st and 2nd Sess. Appendix, Serial No. 27, at 99 (1976). As discussed above, Rule 115(e) had been construed as expanding the power of a bankruptcy court to award counsel fees in involuntary cases beyond the common law bad faith limitation.

Accordingly, it follows that Congress intended that attorney's fees under section 303(i)(1) may be awarded by a bankruptcy court upon the dismissal of an involuntary

---

**4.** Of course, the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) had at that time been recently decided. As the district court noted, even under the

"American rule" concerning fee shifting, counsel fees may be awarded against a party who acts in bad faith. Thus, the bad faith exception was grounded in general jurisprudential principles not unique to bankruptcy law.

case, absent any showing of bad faith. Indeed, had Congress intended otherwise there was no need for any statutory provision since decisional law had long engrafted this concept into bankruptcy law. Thus, I disagree with the suggestion made by the petitioners in this case, relying upon a conclusory statement found in *In re West Side Community Hospital, Inc.*, 112 B.R. 243, 258 (Bankr.N.D.Ill.1990) ("Few courts, however, have assessed costs and attorney's fees pursuant to § 303(i)(1) absent a bad faith finding"), that the instant motion be denied because the petitioners did not exhibit bad faith.

### IV.

■ This conclusion, however, does not resolve this dispute completely. Unlike many fee shifting statutes that make an award of fees to a prevailing party mandatory, *see generally Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.1991) (Fair Debt Collection Practices Act "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general"), section 303(i)(1) of the Bankruptcy Code does not require that fees be awarded to the prevailing debtor. *Accord, e.g., In re Nordbrock*, 772 F.2d 397, 400 (8th Cir.1985). Since the power to award fees under section 303(i)(1)—as under former Rule 115(e)—is discretionary, *In re Reid*, what factors, independent of the bad faith of the petitioners are to be considered in deciding whether to exercise this discretion?

■ The debtor suggests, citing two decisions—*In re Leach*, 102 B.R. 805, 808 (Bankr.D.Kan.1989) and *In re Johnston Hawks, Ltd.*, 72 B.R. 361, 365 (Bankr.D.Hawaii 1987)—which relied upon the above quoted language in *In re Howard, Neilsen & Rush, Inc.*, that such awards be "routine", and thus the norm unless the petitioners demonstrate good reasons not to make the award. That standard, or even one more favorable to the debtor, is correct when dismissal of an involuntary petition follows a seizure of the debtor's property prior to any order for relief, *see also*

Bankr.R. 2001(b), or when a finding of bad faith has been made. These two circumstances have historically resulted in an award of fees against the petitioner.

■ In other instances, such as in the dispute *sub judice*, given the need to interpret the Code in a "holistic" fashion, *accord United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988), the amorphous "totality of the circumstances" approach is the likely standard that Congress intended for bankruptcy courts to use when deciding issues under section 303(i)(1). It is frequently used as a bankruptcy standard for the exercise of discretion in different Code provisions. *E.g. In re BH & P, Inc.*, 949 F.2d 1300 (3d Cir.1991) (disqualification under section 327(a)); *Matter of Baptist Medical Center of New York, Inc.*, 52 B.R. 417, 425 (E.D.N.Y.1985) (relief from the stay under section 362(d)(1)); *In re Green*, 934 F.2d 568 (4th Cir.1991) (dismissal under section 707(b)); *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir.1989) (appointment of a chapter 11 trustee under section 1104); *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir.1991) (dismissal under section 1112 for filing petition in bad faith); *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1160 (5th Cir.1988) (good faith of a proposed chapter 11 plan under section 1129(a)(3)). In fact, in deciding challenges to an involuntary bankruptcy petition, the standard generally applied to determine whether an involuntary debtor is generally not paying its debts as they come due under section 303(h)(1) is to consider the totality of the circumstances. *Accord, e.g., In re Concrete Pumping Service, Inc.*, 943 F.2d 627 (6th Cir.1991). Admittedly, this imprecise standard is not the most "helpful", *In re Schaitz*, 913 F.2d 452, 453 (7th Cir.1990) and simply leaves the articulation of overriding principles to the evolution of caselaw. Yet it is, in all likelihood, the one which Congress expected courts to utilize.

■ If one recognizes that the amount of fees awarded is a distinct issue from the question of allowance of fees under section 303(i)(1), I agree with the movants here in

their implicit allocation of the burden of persuasion. That is, once the debtor demonstrates that the involuntary case was dismissed, the burden shifts to the petitioning creditors to present evidence to disallow an award of fees. In that sense, the award of fees is "routine" insofar as the award should be made unless the petitioners demonstrate otherwise based upon the totality of the circumstances. This conclusion follows from the interpretation given to former Rule 115(e) and from analogizing such fees to costs of suit. Moreover, once one eliminates the issue of the petitioner's bad faith as a relevant factor in deciding whether to award fees, it becomes difficult to articulate that which a prevailing debtor need demonstrate, beyond dismissal itself, to justify an award under section 303(i)(1).

In an attempt to meet their burden under section 303(i)(1), the respondent/petitioners explicitly and implicitly raise three bases for the total disallowance of attorney's fees: the merits of their involuntary petition; the alleged inequitable conduct of the husband/movant; and, the movants' later filing of a voluntary petition. In my view, two of the three bases find theoretical support within the totality of circumstances approach.

■ The merits of the involuntary petition refers to whether the decision to dismiss the petition was straightforward. The closer the question of dismissal, the less likely it may be appropriate to award counsel fees. *In re Reid*, 854 F.2d at 160. *See also In re Eastern Erectors, Inc.*, 396 F.Supp. at 801 (issue of insolvency was a "novel problem").[5] Similarly, if the petitioners could demonstrate that their involuntary petition was dismissed due to improper conduct of the debtor, then fees may not be awarded. *See id.* at 801 (discussing "equitable considerations"); *In re Amburgey*, 68 B.R. 768, 774 (Bankr. S.D.Ind.1987) (court denies fees under section 303(i)(1) when the debtor "has delayed the expeditious treatment" of the involuntary petition, and in the interim has "obfus-

cated the issues by filing" a voluntary petition).

■ I disagree with respondents' position concerning the relevance of a later filed voluntary petition. Rather than affect an entitlement to an award, the later filing may affect the amount of the allowance to the extent that fees are sought for services which would have been rendered in connection with the voluntary filing. *See Paradise Hotel Corp. v. Bank of Nova Scotia* (filing of voluntary petition did not preclude award under section 303(i)(2)). *But see In re Amburgey*, 68 B.R. at 774.

■ Here, I find no basis to disallow in total the movants' request for fees. Turning to the merits of dismissal, that issue was straightforward. There were at most only two valid petitioning creditors when three were needed. Section 303(b)(1) makes dismissal in such an instance quite clear. *Accord, e.g., In re Gilbert*. Furthermore, all of the information regarding the validity of the claims of the two Jaffe petitioners was in their possession prior to their filing the involuntary petition. Therefore, this defect in the petition should have been known at the time the involuntary case commenced.

Although the issue surrounding the petitioners' request for additional time to solicit creditor support for the involuntary petition, based as it was upon a little discussed aspect of Bankr.R. 1003(b), was not simple, that procedural issue does not justify a denial of fees. At bottom, two petitioners filed an involuntary petition, one of them being the movants' former accountant—Mr. Jaffe—when they knew three petitioners were required. Whether any creditors would be permitted to join in such an instance is problematic, *see, e.g., Basin Elec. Power Co-op. v. Midwest Processing Co.*, 769 F.2d 483 (8th Cir.1985) (if petitioning creditors knew or should have known at the time of filing that their involuntary petition was defective, then joinder will not be permitted to cure the defect); *Despres v. Galbraith*, 213 F. 190 (8th Cir.1914); *In*

---

**5.** In other words, rather than examining the "bad faith" of the petitioning creditors a court should consider their "good faith" belief in fil-

ing the involuntary petition, from an objective standpoint.

*re Caucus Distributors, Inc.*, 106 B.R. 890 (Bankr.E.D.Va.1989), assuming that further solicitation would have yielded such a joining creditor. Accordingly, section 303(i)(1) supports an award of fees in this instance.

Respondents' contention that the husband/debtor acted inequitably stems from their interpretation of discovery taken prior· to the dismissal of the involuntary case. (Ex. D–1, Deposition of David Ross, March 12, 1991). Respondents argue that Mr. Ross denied having any unsecured creditors on March 12, 1991, yet his voluntary bankruptcy schedule F, Ex. D–2, filed on November 20, 1991, lists nine such creditors.

Again, this argument concerns the petitioners ability to solicit joinder creditors, which may not have been permitted regardless of any disclosure of the existence of unsecured creditors. *Id.* But even if that problem were overcome, the deposition testimony is ambiguous at best on the question of unsecured creditors. While Mr. Ross at one point of the deposition answers "no" to the question "do you have general creditors who are not mortgages [sic]?", Ex. D–1 at 68, and also states that "I don't owe anything to anyone else", Ex. D–1 at 69, he also mentions at the same time having obligations to various utility companies, Ex. D–1 at 68 and having "current obligations", and a record of those obligations in his books of account. Ex. D–1 at 68–69.

Based upon this deposition testimony, and the problematic nature of joinder by other creditors in any event, it would be inappropriate to conclude that Mr. Ross's conduct justifies a denial of attorney's fees under § 303(i)(1).[6]

**6.** Respondents assume, without any discussion, that any conduct of Mr. Ross's which would justify a denial of fees would be applicable to Mrs. Ross. Given my conclusion regarding the complained of deposition testimony, I need not determine the correctness of this assumption.

**7.** In addition, as this is a fee shifting statute, not a fund in court statute, the time spent on preparing the fee application is compensable. *Accord, e.g., Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir.1978).

**V.**

I now turn to the appropriate amount of fees to award. Only reasonable fees should be awarded. *See, e.g., In re Wavelength, Inc.*, 61 B.R. 614 (9th Cir. BAP 1986); *In re Fox Island Square Partnership*, 106 B.R. 962 (Bankr.N.D.Ill.1989); *In re Camelot, Inc.*, 25 B.R. 861, 865 n. 13 (Bankr.E.D.Tenn.1982); 2 *Collier on Bankruptcy*, ¶ 303.39 at 303–140 (15th ed. 1991). But as this is a fee-shifting statute, I may only disallow compensation based upon specific objections raised by the petitioners, and can not act *sua sponte*. *See generally Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir.1989).[7] In addition, I am not obligated to assess the award against all of the petitioners equally. When a particular petitioner was the driving force behind the filing of the involuntary case, the fees may be assessed in whole or in large part against that petitioner. *See In re Advance Press & Litho, Inc.*, 46 B.R. 700 (D.Colo.1984).[8]

The lodestar approach is the correct method for determining an award of attorney's fees. *E.g. Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This method requires a court to multiply the number of hours reasonably spent by counsel on the litigation by a reasonable hourly rate. Here, the respondents present no challenge to the hourly rates sought by counsel for movants. (Nor do they challenge the expenses claimed.) They do, however, challenge, the reasonableness of the hours spent by counsel as unnecessary or excessive.

Upon review of the application, and the time records submitted, I agree in

**8.** This concept, as does consideration of the merits of the involuntary petition, implicitly examines the "good faith" of the petitioners individually. The shift under section 303(i)(1) in emphasis from the "bad faith" of the petitioners, found under the former Bankruptcy Act, to their "good faith" supports the shift of the burden of persuasion to the petitioners on the over-· all question of the propriety of awarding fees upon dismissal of an involuntary petition.

part with some of respondents' objections. Specifically, counsel lists 13 hours preparing the joint pretrial statement and 5.6 hours preparing for the pretrial conference. That time is excessive. Given the pretrial statement itself, and the issues raised in the statement and at the conference, a reasonable expenditure of time would be 8 hours and 2 hours respectively.

Counsel also spent 14.3 hours of time communicating with the movants' creditors discussing the effects of the involuntary bankruptcy upon them. - Such communications may be appropriate when the debtor is challenging the petition and is seeking creditor support in that regard. But in light of the voluntary filing, shortly after dismissal, without any allegation that the voluntary filing was caused in any way by the involuntary, it is more difficult to pass on to the petitioning creditors the entire cost of these services. A 75% reduction in time is warranted. *See also In re Fox Island Square Partnership*, 106 B.R. at 971.

Movants' counsel disclosed that an inexperienced associate spent 9.2 hours researching Pennsylvania law in defense of the Jaffe claim, to demonstrate a bona fide dispute. To a large extent, counsel was reviewing the state RICO statute. 18 Pa. C.S.A. § 911. But courts have determined that there is no private right of action under the state RICO law. *E.g. Malley–Duff & Associates v. Crown Life Ins. Co.*, 792 F.2d 341, 347 n. 13 (3d Cir.1986), *aff'd*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *Odesser v. Continental Bank*, 676 F.Supp. 1305, 1316 (E.D.Pa.1987); *D'Iorio v. Adonizio*, 554 F.Supp. 222, 232 (M.D.Pa. 1982); *Village of Camelback Property Owners Assn., Inc. v. Carr*, 371 Pa.Super. 452, 538 A.2d 528, 541 n. 7 (1988). And that conclusion should have been quickly discovered. Therefore, a reduction to 2 hours of research time on this point seems appropriate. *See In re Fox Island Square Partnership*, 106 B.R. at 971.

Finally, a senior partner experienced in real estate law but not bankruptcy law spent 5 hours initially researching the issues surrounding the involuntary filing before turning the matter over to counsel more knowledgeable in bankruptcy law. Given the hourly rate sought by this counsel, 2 hours of research should have been sufficient.

In other respects, respondents objections will be overruled. This involuntary was aggressively litigated by all parties, and I cannot fairly conclude that other time spent in connection with this case was excessive. The reductions made yield an award of $29,771.63 in fees plus unchallenged expenses of $2,470.68.

■ Although the parties noted the issue at argument, no evidentiary record was made that would permit me to hold one of the petitioners more responsible for this award than the others. Accordingly, an order shall be entered holding all petitioners liable.

## ORDER

AND NOW, this 30th day of December 1991, for the reasons stated in the accompanying memorandum opinion, it is hereby ordered that the motion of David and Stephanie Ross is granted in part. Judgment is entered under 11 U.S.C. § 303(i)(1) in favor of David and Stephanie Ross against Robert Duffany, Trustee of Roberts Associates, Inc., Pension Plan; Jaffe & Co., P.C. Employee Pension and Profit Sharing Plan; and Jaffe & Co., P.C., jointly and severally, for attorney's fees in the amount of $29,771.63 and expenses in the amount of $2,470.68.