In re Jacob CHARON, Individually and t/a Olympia Inn of Richmond, Debtor.

In re Lois K. CHARON, Individually and t/a Olympia Inn of Richmond, Debtor.

Bankruptcy Nos. 88–01507–RS, 88–01518–RS.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Dec. 7, 1988.

William C. Parkinson, Jr., Richmond, Va., for debtors.

Jonathan M. Apgar, Willis, Damico & Apgar, Roanoke, Va., Robert L. Flax, Richmond, Va., for J & K Enterprises.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came on for a hearing upon the petitions of J & K Enterprises ("J & K"), a Virginia limited partnership, seeking to commence involuntary Chapter 7 cases against Lois Charon and Jacob Charon individually. Upon consideration of the evidence presented at the hearing, and upon review of the briefs submitted by respective counsel, the Court determines that J & K's petitions must be denied, because J & K failed to satisfy the jurisdictional requirements of 11 U.S.C. § 303(b).

## FINDINGS OF FACT

Many of the facts in this matter are not disputed. In 1983, Olympia Motor Inns, Inc. ("Olympia") borrowed $1.2 million at 15.5% interest per annum from Central Federal Savings and Loan Association of Nassau County, Long Beach, New York ("Central Federal").

The note evidencing this loan ("the Note") was secured by a deed of trust on a parcel of real estate improved by a motel ("the Property") located at 5050 Midlothian Turnpike in Richmond, Virginia. In 1984 the Property was transferred to J & K with Olympia becoming J & K's general partner. Finally, in April, 1987, the Property was sold to Lois and Jacob Charon ("the Charons") who personally assumed the $1.2 million Note as part of the consideration in purchasing the Property for $1.5 million. The Note provided for interest-only monthly payments until June 1, 1988, when the entire principal amount was due. The Charons admit that they stopped making interest payments in January, 1988 and that they failed to pay the balloon principal payment when due.

The evidence showed that four parties—Olympia, J & K, Lois Charon, and Jacob Charon—were each obligated to pay the Note. As a result of the Charon's failure to make interest and principal payments when they became due, Central Federal declared the Note in default and scheduled a foreclosure sale for July 12, 1988. On July 11, 1988 J & K filed the instant petitions in an effort to forestall the foreclosure and to force the Charons into bankruptcy. J & K premised its involuntary petitions on its claim that it will be obligated to pay the deficiency, if any, owed on the Note after sale of the Property at foreclosure.

In addition, J & K attempted to show that the Charons had failed to make payments due under certain equipment leases on which J & K was jointly liable. The testimony of Mr. Jayantilal Patel, president of Olympia, revealed that approximately $50,000 in rent and late charges was due on a number of equipment leases under which the motel was provided with phone service and televisions. Mr. Patel's unrefuted testimony was that Olympia had entered into these leases, which were personally guaranteed by Mr. Patel, and which were later assumed by J & K when the partnership purchased the motel. J & K's Exhibit 8 is a letter from Contel Credit Corporation which makes demand upon Mr. Patel, as guarantor, for past due amounts on the telephone lease. J & K claims that the Charons assumed the obligations under these leases. The unrefuted testimony of Lois Charon, however, was that the leases

had been assumed by Charon, Incorporated, a corporation formed to operate the motel. Mrs. Charon's assertion is supported by J & K's Exhibit 8 in which Contel Credit Corporation references the past due account as "Charon, Incorporated." Based upon the evidence adduced at the hearing, the Court cannot conclude that the Charons were personally liable upon the leases. As J & K has not brought an involuntary petition against Charon, Incorporated, the Court finds that any amounts which may be owed by J & K on the leases cannot serve as claims against the Charons individually to satisfy the jurisdictional limits of 11 U.S.C. § 303(b)(2).

J & K was unable at the hearing to produce any credible evidence as to the value of the Property. The testimony of Lyndell Winters, a commercial real estate broker from Roanoke, Virginia, was to the effect that the Property would realize a lower price upon a forced sale than it would upon a sale in the ordinary course, and that the Property might bring a better price if marketed as something other than a hotel, for instance as an elder-care facility. Mr. Winters, however, was not qualified as an expert, and, in any case, did not testify as to an appraised value for the Property. The evidence does reflect that throughout the winter and spring of 1988 the Charons attempted to sell the Property. A number of offers to purchase the Property were made by various parties, and these offers varied in amount from $1.35 million to $2.0 million. Apparently, none of these potential sales, resulted in an enforceable agreement. Based upon this evidence the Court is unable to reach any conclusions as to the value of the Property.

Although it would seem that the principal balance of the Note has remained constant, because the Note provided for no curtailment prior to June, 1988, J & K failed to adduce any evidence as to the amount of the principal indebtedness remaining upon the Note. No witness with actual knowledge of the payment history of the Note testified at the hearing, and no documentary evidence as to payments made or arrearages outstanding was of-

fered. The Charons admitted that they ceased making interest payments in January, 1988, and that they failed to make the principal payment in June, 1988, but no evidence was presented concerning what, if any, payments were made prior to January. From the evidence before it the Court is simply unable to reach any conclusions concerning the total amount owed under the Note.

## CONCLUSIONS OF LAW

■ Section 303 of the Bankruptcy Code provides, in pertinent part:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under Chapter 7 ... of this title ... (1) by three or more entities, each of which is ... a holder of a claim against such person that is *not contingent as to liability or the subject of a bona fide dispute* ... if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims ... [or] (2) if there are fewer than 12 such holders ... *by one or more of such holders that hold in the aggregate at least $5,000 of such claims.*

11 U.S.C. § 303(b) (emphasis added). This case is without dispute one in which "there are fewer than 12 such holders," and as such the jurisdictional requirements of § 303(b) can be met by any holder of a claim against the debtor(s) which is not contingent as to liability, not the subject of a bona fide dispute, and which is unsecured in the amount of at least $5,000.

While this Court is not in complete accord with those cases holding that no contingency exists on a claim between joint obligors once demand has been made upon one of the obligors, the Court believes that it is unnecessary to reach this issue because the evidence adduced at the hearing failed to show that J & K is the holder of an unsecured claim totalling at least $5,000. Since no probative evidence is before the Court either as to the value of the

Property[1] or as to the total indebtedness on the Note, the Court cannot find that the Property, upon foreclosure, would bring a price less than the indebtedness remaining under the Note. As such the Court cannot conclude that J & K, whose claims against the Charons are premised upon the potential deficiency which may result upon foreclosure, is the holder of unsecured claims aggregating at least $5,000 against each of the Charons individually. It is entirely possible that the sale of the Property will realize an amount sufficient to fully liquidate the debt owed to Central Federal, in which case J & K would have no claim against the Charons at all. Whether the standard is by clear and convincing evidence or merely by a preponderance, J & K simply failed in this case to meet its burden of proving that it satisfied the jurisdictional requirements of § 303(b).

Since the Court concludes that J & K's petitions must be dismissed upon jurisdictional grounds, it is not necessary for the Court to address the issue of whether a single, large creditor can successfully bring an involuntary petition absent a showing that the debtor "is generally not paying such debtor's debts as such debts become due." 11 U.S.C. § 303(h). The Court notes that the uncontroverted testimony of Jacob Charon was that at the time of the hearing the Charons were current on all of their debts except for the Note in question. Bankruptcy courts have dismissed involuntary petitions brought by a sole creditor of an alleged debtor where such creditor has failed to show any special circumstances, such as fraud, trick, artifice or scam being perpetrated by debtor. *In re R.V. Seating, Inc.*, 8 B.R. 663 (Bankr.S.D.Fla.1981); *In re 7H Land & Cattle Co.*, 8 B.R. 22 (Bankr.D. Nev.1981); *In re Le Sher International, Ltd.*, 32 B.R. 1 (Bankr.S.D.N.Y.1983). *See also, In re Nordbrock*, 772 F.2d 397 (8th Cir.1985).

The petitions of J & K seeking to commence involuntary Chapter 7 cases against Lois and Jacob Charon will be denied. Appropriate Orders will issue.

---

1. In its brief, J & K argues that, because this Court earlier granted relief from stay to Central Federal to permit Central Federal to pursue its rights against the property under state law and pursuant to its deed of trust, this Court is required to find, as it did in the stay litigation, that the Charons have no equity in the property.

This Court cannot agree with this contention. As the legislative history of § 506(a) of the Bankruptcy Code suggests, value determinations reached in stay litigation are not res judicata in other contexts within a bankruptcy case, and do not create an estoppel preventing a party from later arguing for another valuation.