**In re PALACE ORIENTAL RUGS, INC., Alleged Debtor.**

**Bankruptcy No. 93–30932.**

United States Bankruptcy Court, D. Connecticut.

March 18, 1996.

Bennett H. Last, Gilbride, Tusa, Last & Spellane, Greenwich, Connecticut, for Petitioning Creditors.

Elena L. Cahill, Law Offices of Ambrogio & Cahill, Stratford, Connecticut, for Alleged Debtor.

## MEMORANDUM OF DECISION ON INVOLUNTARY PETITION

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

In this involuntary Chapter 7 case the parties have called upon the Court to determine (1) whether the Petitioning Creditors' claims are "the subject of bona fide dispute" within the meaning of 11 U.S.C. § 303(b)(1); and/or (2) whether the Alleged Debtor, an oriental rug retailer, is "generally not paying ... [its] debts as such debts become due ..." within the meaning of 11 U.S.C. § 303(h)(1).

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant case by virtue of 28 U.S.C. §§ 1334(a), (b). This Court derives its authority to hear and determine this

matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This Memorandum of Decision shall constitute this Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052(a).

## III. BACKGROUND

The instant case was commenced by the December 9, 1993 (hereinafter, the "Petition Date") filing of an involuntary petition against the Alleged Debtor by the following petitioning creditors: (1) MER Corp., (2) Kelaty International, Inc., and (3) Amir Aziz & Son, Inc. (hereinafter collectively referred to as the "Petitioning Creditors")[1] On January 21, 1994, the Alleged Debtor filed an Answer with Counterclaim, asserting that the Petitioning Creditors' claims were subject to bona fide disputes, that the Alleged Debtor was generally paying its debts as they came due, and claiming that the Involuntary Petition was commenced by the Petitioning Creditors in bad faith. On February 18, 1994, the Petitioning Creditors filed their Reply to Counterclaim, generally denying the allegations contained in the Alleged Debtor's counterclaim. After a rather contentious period of discovery, this case was tried before the Court.

## IV. DISCUSSION

The adjudication of involuntary bankruptcy petitions is governed by 11 U.S.C. § 303 and the Federal Rules of Bankruptcy Procedure. Section 303, as applicable to this case, provides in relevant part, as follows:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> > (1) by three or more entities, each of which is ... a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute ... if such claims aggregate at least $5,000[2] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims....
>
> \*    \*    \*    \*    \*    \*
>
> (h) ... [A]fter trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
>
> > (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute....

11 U.S.C. § 303 (1992).

### A. Burden of Proof.

▇▇▇▇ Petitioning creditors bear the ultimate burden of proving that all statutory requirements of Bankruptcy Code Section 303 have been met. 2 *Collier on Bankruptcy* ¶ 303.15[7], at p. 303–80 (15th ed. 1995). Specifically, they bear the burden of establishing the "jurisdictional" prerequisites of Section 303(b). *See, e.g., In re Charon*, 94 B.R. 403, 405–406 (Bankr.E.D.Va.1988). Likewise, they bear the ultimate burden of proving by a preponderance of the evidence that the Alleged Debtor is generally not paying its debts as such debts become due.

---

1. In their Supplemental Proposed Findings of Fact and Conclusions of Law, the Petitioning Creditors represent to the Court that "[t]he claim with respect to Amiran contained in the involuntary petition has been withdrawn by the Petitioning Creditors still leaving three valid Petitioning Creditors." The Court's independent review of the official file in this case reveals that no party other than the Petitioning Creditors was ever a petitioner in this case. There is, however, some indirect evidence that a fourth petitioning creditor may have been contemplated in this case. Within the Involuntary Petition itself there is a disparity between the "Total Amount of Petitioners' Claims"—scheduled at $104,509.87—and the actual arithmetic total of the scheduled "Amount of Claim" for the three Petitioning Creditors— $35,772.94. If, contrary to this Court's review, an entity named "Amiran" was an original petitioning creditor, that creditor has not ceased to be a party to this case since the Court has not entered an order dropping any party. Fed. R.Bankr.P. 7021.

2. Although Section 303(b)(1) was amended by the Bankruptcy Reform Act of 1994 to raise this monetary threshold to $10,000, that amendment is applicable only to cases commenced on or after October 22, 1994.

## B. Reference Date for Claims Analysis.

■ The petition filing date is the appropriate reference date for the determination of whether an alleged debtor is generally not paying its debts as they come due. *See In re B.D. Int'l Discount Corp. v. Chase Manhattan Bank,* 701 F.2d 1071, 1076 n. 9 (2d Cir.1983). Similarly, under the creditor qualification standards of Section 303(b)(1), the relevant question is whether the claims of petitioning creditors were the subject of a bona fide dispute on the petition date. However, in determining the petition date status of claims, the Court is not precluded from considering post-petition evidentiary developments.

## C. "Generally not Paying" Analysis.

Having heard and reviewed the testimonial and documentary evidence in this case, and after a thorough review of the entire case record, including the written and oral arguments of counsel for the respective parties, this Court concludes that the Petitioning Creditors have failed to sustain their burden of proving that the Alleged Debtor was "generally not paying" its debts "as such debts become due" on the Petition Date within the intendment of Section 303(h)(1).

■ In reaching this conclusion the Court proceeds without a great deal of specific guidance from legislative sources or judicial authorities. *See generally B.D. Int'l Discount Corp., supra.* However, these sources are supportive of the following analytical approach in this case. The Court must first undertake a rough calculus of the number and amount of the Alleged Debtor's delinquent and current debts on the Petition Date. The Court then utilizes the results of that calculus to determine if the ratio of delinquent to current debts is supportive of a pattern of "generally not paying". On the evidence presented in this case, that pattern is not difficult to divine.

■ Even if the Court were to include as "delinquent" the debts allegedly owed to the Petitioning Creditors by the Alleged Debtor, *i.e.* conclude that such debts exist without bona fide dispute in the amounts asserted by the Petitioning Creditors, the Petitioning Creditors have failed to convince the Court that the nonpayment of those debts constitutes a majority, or even a substantial minority, of the Alleged Debtor's debts, in either number or amount.

The Petitioning Creditors presented payment history evidence relative to only one debt other than their own, namely utility charges due to the Southern New England Telephone Co. (hereinafter referred to as "SNET"). The Court finds that despite its introduction by the Petitioning Creditors, the evidence as to the SNET debt is supportive of that debt's "current" status on the Petition Date.

The only evidence of the existence and payment history of debts other than those allegedly owed to the Petitioning Creditors and SNET (hereinafter referred to as the "Third Party Debts") came from a witness offered by the Alleged Debtor. Hashem Hashemi, an officer and agent of the Alleged Debtor, testified credibly as to the status of the Third Party Debts on the Petition Date. That testimony established to the Court's satisfaction that with the possible exception of the Petitioning Creditors, the Alleged Debtor was generally "current" with all of its creditors on the Petition Date. In essence, the Court concludes that the genesis of this case was not the generalized financial dislocation of the Alleged Debtor, but rather its isolated disputes—bona fide or not—with the Petitioning Creditors. Such a situation does not constitute "generally not paying ... [one's] debts as such debts become due ...", and is not necessarily an appropriate precipitant to an involuntary bankruptcy.

## D. Bona Fide Dispute Analysis.

Given the foregoing findings and conclusions on the ultimate issue of "generally not paying" under Section 303(h)(1), it is unnecessary to consider issues of petitioning creditor qualification, such as whether the claims of the Petitioning Creditors were "the subject of a bona fide dispute" on the Petition Date.

## E. The Alleged Debtor's Counterclaim.

■ A claim in favor of an alleged debtor for costs, attorneys' fees and/or damages

under Section 303(i) ripens upon the dismissal of the involuntary petition. *See In re Ross,* 135 B.R. 230, 234 (Bankr.E.D.Pa.1991). Although during the course of the trial of this case the Court heard isolated testimony relevant to the Alleged Debtor's Counterclaim for costs, attorneys' fees and damages, the Court is not convinced that the parties viewed that dispute as sufficiently ripe to elucidate a full and fair presentation of all evidence deemed material to issues arising therein. It is also unclear whether an alleged debtor may plead and prosecute a "counterclaim" prior to dismissal of the involuntary petition. *See* Fed.R.Bank.P. 1011(d), (e); *In re Contemporary Mission, Inc.,* 30 B.R. 369 (Bankr.D.Conn.1983). Therefore, it is the Court's view that a supplemental evidentiary hearing be held to consider the existence of the Petitioning Creditors' liability, if any, to the Alleged Debtor, and the extent of any consequential financial awards for costs, attorneys' fees and/or damages.

### V. CONCLUSION

Having failed to meet their burden of proof under Section 303(h), the Petitioning Creditors are not entitled to an Order for Relief on their Involuntary Petition; and said Petition shall be dismissed by separate Order. A hearing shall be held upon the Alleged Debtor's Counterclaim under Section 303(i) on April 19, 1996 at 10:00 A.M.