## In re SCRAP METAL BUYERS OF TAMPA, INC.

### No. CIV.A. 99–1925–CIV–T24E.

United States District Court, M.D. Florida.

Aug. 31, 2000.

John D. Goldsmith, Trenam; Kemker, Scharf, Barkin, Frye, Mullis, & O'Neill, P.A., Tampa, FL, for Scrap Metal Buyers of Tampa, Inc.

Michael C. Markham, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, FL, James Weisman, Pittsburgh, PA, for appellees.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.[1]

I. *Introduction*

In this bankruptcy appeal, appellant Scrap Metal Buyers of Tampa, Inc. ("Scrap Metal") appeals an Order on Remand ("Order") entered by the United States Bankruptcy Court for the Middle District of Florida dated April 27, 1999. The Order denied Scrap Metal's motion, pursuant to 11 U.S.C. § 303(i)(1),[2] for attorneys' fees and costs following dismissal

---

1. Of the District of Massachusetts, sitting by designation.

2. Section 303 provides in relevant part:
   (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
   (1) against the petitioners and in favor of the debtor for—
   (A) costs; or
   (B) a reasonable attorney's fee
   . . . .
   11 U.S.C. § 303(i)(1).

of an involuntary petition. In its brief to this Court, Scrap Metal makes two arguments. First, it contends that the Bankruptcy Court employed an incorrect legal standard in order to determine that an award of attorneys' fees and costs was not warranted. Second, Scrap Metal asserts that even if the standard applied by the Bankruptcy Court is appropriate, an award of fees and costs is nonetheless justified in the circumstances in this case. In response, the appellees, Charles Bluestone Company, Inc. ("Bluestone"), Southland Express, Inc. ("Southland"), Pavlich, Inc. ("Pavlich"), and Pentech Alloys, Inc. ("Pentech") (collectively, "Petitioning Creditors") defend the determination of the Bankruptcy Court on both points.

## II. *Facts & Procedural History*

Scrap Metal was in the commercial and wholesale non-ferrous metal recycling business. Bluestone is a processor of stainless steel, with its mill located in Elizabeth, Pennsylvania. Bluestone also engaged in brokering for scrap metal dealers selling metals to other mills. In January 1990, Bluestone and Scrap Metal worked out a brokering deal, whereby Bluestone agreed to broker material for Scrap Metal. As part of the arrangement, Bluestone agreed to make advances to Scrap Metal which would be credited against shipments. But by the end of that year, large amounts of money were advanced by Bluestone without corresponding metal shipments by Scrap Metal. The principals of the companies (and their attorneys) met in January, 1991, to discuss the matter, but made little headway. When Scrap Metal stopped returning Bluestone's phone calls, Bluestone became more concerned. When a February 28, 1991 settlement meeting failed to result in any progress, Bluestone began to consider filing an involuntary petition. Bluestone's attorney then acquired additional data regarding Scrap Metal's financial position and its other creditors.

The Southland debt, as alleged in its second amended joinder, totaled $16,484. The Pavlich debt was never disputed by Scrap Metal. The approximately $8,000 debt involved certain unpaid fees. The Pentech debt arises out of a series of transactions whereby Pentech agreed to ship a total of six loads of copper shreds to Scrap Metal in exchange for payment. At the time of the filing of the petition, Pentech alleged that it was owed over $67,000. When efforts to work out arrangements to address the mounting debts were unsuccessful and after the Petitioning Creditors marshaled some additional evidence suggesting that Scrap Metal's financial situation was precarious, the Petitioning Creditors turned to the involuntary petition.

On March 13, 1991, an involuntary petition was filed against Scrap Metal by the Petitioning Creditors.[3] Following a four-day hearing, the Bankruptcy Court granted Scrap Metal's motion for involuntary dismissal. In its order of dismissal, the Bankruptcy Court found that each of the four Petitioning Creditors established a prima face case that it was the holder of a claim, but also found that the Petitioning Creditors failed to present prima facie evidence that Scrap Metal was not generally paying its debts as they became due. The Bankruptcy Court subsequently held an eight-day evidentiary hearing to permit Scrap Metal an opportunity to present evidence to prove that the Petitioning Creditors acted in bad faith. During the evidentiary hearing, the Bankruptcy Court heard testimony from representatives of each of the Petitioning Creditors and their counsel. All of the principals of each of the Petitioning Creditors testified that they did not file the petition to harm Scrap Metal's business in any way. After finding that the Petitioning Creditors acted reasonably under the circumstances and had no improper motive in filing the petition, the Bankruptcy Court held, on November 20, 1996, that the Petitioning Creditors did not act in bad faith and denied Scrap

**3.** Southland filed a joinder on June 28, 1991.

Metal's request for sanctions, damages, and attorneys' fees and costs. Scrap Metal appealed that order to this Court, which substantially affirmed the Bankruptcy Court in an opinion dated November 14, 1997. In that opinion, Chief Judge Kovachevich affirmed the denial of sanctions pursuant to Rule 9011 as well as the denial of damages due to bad faith, specifically finding that the Petitioning Creditors possessed no improper motives and their decision to file the Involuntary Petition was reasonable under the circumstances. Yet the District Court determined that the Bankruptcy Court's opinion was unclear and ambiguous on the issue of attorneys' fees and costs and, consequently, remanded the matter back to the Bankruptcy Court for further proceedings. On remand, the Bankruptcy Court issued the Order presently on appeal. The Order addressed the sole issue of whether the Bankruptcy Court should award attorneys' fees and costs to Scrap Metal pursuant to 11 U.S.C. § 303(i)(1), in the absence of finding bad faith on the part of the Petitioning Creditors. Further description of this Order is contained below, as analysis requires.

### III. *Standards of Review*

■ Upon reviewing the orders of a bankruptcy court, a district court cannot disturb or set aside the bankruptcy court's findings of fact unless they are clearly erroneous. Bankruptcy Rule 8013 expressly provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P. 8013. *See In re Downtown Properties Ltd.*, 794 F.2d 647, 651 (11th Cir.1986). The party who seeks to demonstrate that the bankruptcy court's findings of fact were clearly erroneous "has a heavy burden to bear." *United States v. DiMucci*, 879 F.2d 1488, 1494 (7th Cir.1989) (citing *IPEC, Inc. v. International Litho. Corp.*, 869 F.2d 1080, 1083

(7th Cir.1989)). The "clearly erroneous" standard means that the reviewing court must be left "with the definite and firm conviction that a mistake has been made." *United States v. United States Gypsum Co.*, 333 U.S. 364, 375, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Or as the Seventh Circuit has so eloquently expressed it, "[t]o be clearly erroneous, a decision must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). Conclusions of law, meanwhile, are reviewed de novo. *In re Owen*, 86 B.R. 691, 693 (M.D.Fla.1988).

■ The Eleventh Circuit has made clear that determinations regarding attorneys' fees and costs "in a bankruptcy proceeding will be reversed only if the court abused its discretion." *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir.1990). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.* at 890. Thus, in summary, "[t]he Bankruptcy Court's findings of fact are subject to a clearly erroneous standard of review; its legal conclusions are reviewed de novo; and its decisions to award or deny fees ... are subject to an abuse of discretion standard." *In re United Merchants and Mfrs. Inc. and Victoria Creations, Inc.*, No. 97 CIV. 5437(DC), 1999 WL 4929, at *1 (S.D.N.Y. Jan. 5, 1999).

### IV. *Discussion*

■ Scrap Metal's initial basis for contending that the Bankruptcy Court erred is that it adopted an incorrect legal standard in order to determine whether fees and costs were warranted under 11 U.S.C. § 303(i)(1). Scrap Metal asserts that "the correct legal standard is the standard employed by *Ross, Landmark Distributors,* and *Advance Press....*"

Scrap Metal Brief at 7; *see In re Ross*, 135 B.R. 230, 238 (Bankr.E.D.Pa.1991); *In re Landmark Distributors, Inc.*, 189 B.R. 290, 306 (Bankr.N.J.1985); *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 703 (Bankr.D.Colo.1984). The Bankruptcy Court borrowed substantially from *Ross*, but ultimately decided to adopt a slightly different analysis. A review of the Bankruptcy Court's thoughtful opinion is in order.

The Bankruptcy Court first correctly noted that the proper analytic approach to the attorneys' fees determination in involuntary cases in the absence of bad faith is a matter of first impression in the Eleventh Circuit. *See In re Scrap Metal Buyers of Tampa, Inc.*, 233 B.R. 162, 164 (Bankr.M.D.Fla.1999). The thorough analysis of Bankruptcy Judge Baynes befits the novelty of the issue. Citing numerous authorities, the Bankruptcy Court explained that courts generally agree that the determination "falls squarely within the discretion of the trial court" and that "a finding of bad faith is not necessary to a § 303(i)(1) award." *Id.* On these matters, the parties do not disagree. The Bankruptcy Court continued: "After reviewing the decisions involving § 303(i)(1) issues, one stands out as having carefully analyzed both the history of this statutory authorization for fees and costs, and the factors relevant to determine whether an authorization is warranted: *In re Ross* . . . ." *Id.* at 165. The Bankruptcy Court

explained that "[t]he *Ross* court carefully examined the history of § 303(i)(1) and determined the appropriate test to use is a totality of the circumstances analysis." *Id.* (citing *Ross*, 135 B.R. at 237). The Bankruptcy Court added that the *Ross* court had concluded that the alleged debtor need only show that the involuntary petition was dismissed before the burden of persuasion shifts to the petitioning creditors to present evidence to disallow an award of fees. *See id.* (citing *Ross*, 135 B.R. at 238).

■ Adopting the same reasoning and support for using the totality of the circumstances test as is provided in the *Ross* opinion, the Bankruptcy Court held that the totality test is the correct framework for making a determination under 11 U.S.C. § 303(i)(1). *See Scrap Metal*, 233 B.R. at 165. The Bankruptcy Court, however, rejected the *Ross* court's imposition of shifting burdens. *See id.* at 165–166. The *Ross* court adopted the shifting burdens analysis in part because it realized that "once one eliminates the issue of petitioner's bad faith as a relevant factor in deciding whether to award fees, it becomes difficult to articulate that which a prevailing debtor need demonstrate, beyond dismissal itself, to justify an award under section 303(i)(1)." *Ross*, 135 B.R. at 238. The Bankruptcy Court recognized this problem, but nonetheless determined that "the same issues are adequately addressed by using a rebuttable presumption" rather than by shifting the burden of persuasion.[4]

---

4. The difference is not insignificant. A rebuttable presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof. *See* Fed.R.Evid. 301. The *Ross* formulation, however, takes matters one step further. The *Ross* burden-shifting regime places not only the burden of production, but also the ultimate burden of persuasion upon the party against whom it is directed.

This abstract distinction is made easier to understand in the context of this actual section 303(i)(1) issue. Under the regime adopted by the Bankruptcy Court here, upon proof that the debtor successfully achieved

dismissal of the involuntary petition, a rebuttable presumption that attorneys' fees and costs ought be granted arises. In order to rebut the presumption, however, the petitioning creditors need only produce some evidence that fees and costs are not warranted. The burden to persuade the court to grant fees and costs at all times remains on the debtor. Under the *Ross* formulation, upon proof that the debtor obtained dismissal of the involuntary petition, the burdens of both production and persuasion shift to the petitioning creditors to prove to the court's satisfaction that fees and costs ought not be granted. In light of the evidentiary burdens of each scheme, it is not surprising that Scrap Metal advocates the *Ross* regime, whereas the Peti-

*Scrap Metal,* 233 B.R. at 165–66 & n. 11. In rejecting the burden shifting analysis of *Ross,* the Bankruptcy Court explained that "this mechanism is too rigid and requires the petitioning creditors to prove a negative proposition." *Id.* at 166 n. 11. Thus, the Bankruptcy Court held that when an involuntary petition is dismissed, regardless of the existence of bad faith, an alleged debtor's motion for attorneys' fees and costs under section 303(i)(1) raises a rebuttable presumption that fees and costs are authorized. *See id.* at 166. The petitioning creditors then bear the burden to produce some evidence, under the totality of the circumstances, that factors exist which overcome the presumption, and support the disallowance of fees. *See id.* The Bankruptcy Court added that under the totality of the circumstances analysis, the merits of the involuntary petition and the role of any improper conduct on the part of the alleged debtor are "definitive issues to be considered," while the reasonableness of the actions taken by the petitioning creditors, as well as the motivation and objectives behind filing the petition should also be considered. *See id.* at 166–67 (citing *In re K.P. Enter.,* 135 B.R. 174, 177 (Bankr.D.Me.1992)).

The determination of which legal standard to apply in determining the propriety of fees and costs constitutes matter of law, subject to de novo review. Underlying this mere procedural dispute, however, are core principles of bankruptcy law relating to involuntary petitions. First, the charge of bankruptcy can have severe consequences on an alleged debtor. As Bankruptcy Judge Thomas Britton has recognized: "[a]n allegation of bankruptcy is a charge that ought not to be made lightly. It usually chills the alleged debtor's credit and his sources of supply. It can scare away his creditors. It leaves a permanent scar, even if promptly dismissed." *In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 101 (Bankr.S.D.Fla.1981). On the other hand, the involuntary petition

procedures of section 303 exist in recognition of the precarious financial position in which creditors find themselves when dealing with an alleged debtor. Thus, in a general sense, while a petitioning creditor is more than within its rights to file an involuntary petition, in light of the extreme consequences that would needlessly arise if the petition were subsequently dismissed, the creditor should do so only after carefully considering the merits of the petition. These same polar principles undergird the specific dispute here regarding the appropriate legal standard under section 303(i)(1). The issue here focuses on which party should bear the burden of proving whether attorneys' fees and costs should be awarded in the absence of bad faith. Should the alleged debtor, having been successful in thwarting the involuntary petition, be saddled with the further burden of proving that attorneys' fees and costs are warranted? On the other hand, should the petitioning creditors be punished, by having to bear the burden of proving that fees and costs are not in order even though the Bankruptcy Code permits them to file involuntary petitions and, as is undisputed here, there is no finding of bad faith on their part?

The Bankruptcy Court's rebuttable presumption scheme balances these competing concerns in an appropriate manner. First, by permitting the alleged debtor merely to show that the petition was dismissed in order to initiate the analysis, the Bankruptcy Court gives due deference to the travails of the debtor who has been unwillingly hauled into court. The rebuttable presumption then imposes upon the petitioners the burden of demonstrating some evidence to overcome the presumption in favor of awarding fees to the alleged debtor. Placing the burden of going forward on the petitioning creditors, of course, makes good sense in part because much of the evidence pertaining to the award of fees and costs, such as the creditors' knowledge of the debtor's affairs at

tioning Creditors prefer a rebuttable pre-     sumption.

the time of the petition, is uniquely possessed by them. At the same time, however, as is quite apparent in the case at hand, an alleged debtor can marshal relevant evidence and attorney argument on these same issues as well. Thus, access to evidence cannot justify the shifting of the burden of persuasion in addition to the burden of production. Instead, imposing the burdens of production and persuasion upon the petitioning creditors would impose too severely upon those who were not acting in bad faith, but were instead motivated by a desire to protect their legitimate interests. Applying the burden shifting standard, which would more likely yield awards of fees and costs than the rebuttable presumption standard, even where bad faith is not present, might therefore operate to chill the filing of fully warranted involuntary petitions. Furthermore, generally speaking, one who implores the court's assistance must first prove worthy of it. Thus, because the alleged debtor moves the court to award fees and costs, shifting the burden of persuasion to the creditors would be curious indeed. Finally, as the Bankruptcy Court concluded, "[b]y applying the rebuttable presumption framework, the Court's exercise of discretion is an informed examination of the entire situation surrounding the filing of the petition, the ultimate dismissal, and any further evidence in the § 303(i) litigation." *Scrap Metal,* 233 B.R. at 166. Adopting the Bankruptcy Court's comprehensive and thoughtful approach to this issue, this Court holds specifically that the rebuttable presumption scheme is preferable to the burden-shifting regime and ought control the section 303(i) analysis.

Alternatively, even if this Court were to adopt the *Ross* approach, the Petitioning Creditors more than shouldered their burden to show that fees and costs were not warranted.

First, there is no dispute that Scrap Metal has satisfied the section 303(i) prerequisite of obtaining dismissal of the involuntary petition. The Petitioning Creditors subsequently responded, during the eight-day-long bad faith hearing, with evidence tending to show that their decision to file was justifiable under the circumstances. As explained above, the legal standard requires an inquiry into: (1) the merits of the involuntary petition, (2) the conduct of the debtor, (3) the reasonableness of the actions taken by the petitioning creditors, and (4) the motivations and objectives behind filing the petition. *See Scrap Metal,* 233 B.R. at 166. In consideration of these factors, the Bankruptcy Court concluded as follows:

> There were approximately twelve days of trial in this case, four on the issue of dismissal and eight on the issue of bad faith. This Court will not restate the findings affirmed in its § 303(i) Opinion here, but relies on those findings to support its conclusion. Applying the adopted standard to this case, this Court concludes there is sufficient evidence before it to deny attorney's fees and costs to the involuntary Debtor.
>
> The petition in this case had merit, despite dismissal. The Petitioning Creditors' actions were reasonable under the circumstances, and their motives and objectives were legitimate uses of the Bankruptcy Code. In addition, the Involuntary Debtor engaged in improper conduct. This Court hereby determines the facts and circumstances surrounding this case, when examined in light of the factors listed in the § 303(i)(1) analysis adopted in this opinion, weigh in favor of each party bearing its own fees and costs.

*Id.* at 167. Even applying the more debtor-friendly burden-shifting approach, this Court rules that the Petitioning Creditors produced substantial evidence proving that fees and costs were not warranted.

First, with respect to the merits of the nonetheless dismissed petition, the Court notes that, in an earlier phase of the proceedings not challenged here, the Bankruptcy Court found that the Petition-

ing Creditors established a prima facie case that each was a holder of a valid claim, but dismissed the petition because the Petitioning Creditors were unable to show that Scrap Metal was generally unable to pay its debts as they became due. *See* 11 U.S.C. § 303(h)(1). Furthermore, the Bankruptcy Court found—and the Court ought give due deference to its findings regarding credibility—that Scrap Metal's accounting records, which would normally establish the ability to pay debts as they became due, "were maintained in such a manner as to defy credibility." *In re Scrap Metal Buyers of Tampa, Inc.*, No. 91–3177, slip op. at 19 (Bankr.M.D. Fla. Nov. 20, 1996) (hereinafter Mem. Op.). Yet, possibly in part because of the condition of the books, which made proving anything with them a complicated endeavor, the Bankruptcy Court concluded that the Petitioning Creditors failed to show that Scrap Metal was generally unable to pay its debts as they became due. Thus, when one considers that the Bankruptcy Court found that the Petitioning Creditors established that each was a holder of a valid claim, but held that the Petitioning Creditors were unable to show that Scrap Metal was generally unable to pay its debts even in the face of its determination that Scrap Metal's books defy credibility, it becomes apparent that the petition was dismissed by only a narrow margin. As the *Ross* court explained, "[t]he closer the question of dismissal, the less likely it may be appropriate to award counsel fees." *Ross*, 135 B.R. at 238. In *Ross*, there were only two valid petitioning creditors when three were needed. Dismissal under such circumstances is quite clear pursuant to 11 U.S.C. § 303(b)(1), which requires three or more entities who are holders of claims that are not contingent nor the subject of a bona fide dispute in order to file an involuntary petition. The Petitioning Creditors here, who comprised more than three entities each of whom established a *prima facie* case that valid claims were held, came far closer to surviving the dismissal motion.

The Bankruptcy Court also found that Scrap Metal engaged in improper conduct. *See Scrap Metal*, 233 B.R. at 167. In its earlier memorandum opinion, the findings of which were incorporated by the Order on appeal here, the Bankruptcy Court noted Scrap Metal's "poor accounting" and Scrap Metal's principal's "obfuscation of the financial condition of the Debtor." Mem. Op. at 30. As the Bankruptcy Court added in its Order on Remand, "the alleged Debtor had hidden vital information, or had lead [sic] the Petitioning Creditors astray, on more than one occasion during the litigation." Order on Remand at 2 n. 3. Testimony on these issues obtained during the bad-faith hearing is cited accurately throughout the Bankruptcy Court's memorandum opinion and supports these factual conclusions. *See* Mem. Op. at 5, 16–17, 19. Consequently, the Bankruptcy Court's finding that Scrap Metal engaged in improper conduct was not clearly erroneous. Finally, with respect to the last two criteria relevant to the determination of fees and costs, i.e., the reasonableness of the actions taken by the petitioning creditors and the motivations and objectives behind filing the petition, the Bankruptcy Court relied on ample evidence in the record that lends support to the petitioning creditors on these matters. *See* Mem. Op. at 2–19. More importantly, when the initial memorandum opinion was on review to this Court, Chief Judge Kovachevich "agree[d] with the Bankruptcy Court's conclusion that the use of the Involuntary Petition was reasonable under the circumstances, and finds no improper motive on the part of the Petitioning Creditors." *Scrap Metal Buyers of Tampa, Inc. v. Charles Bluestone Co., Inc.*, 214 B.R. 509, 513 (M.D.Fla.1997). Thus, in light of substantial evidentiary support underlying each of the Bankruptcy Court's relevant findings, this Court rules that the

Petitioning Creditors discharged their duty to show that attorneys' fees and costs were not warranted under the totality of the circumstances. Consequently, the Bankruptcy Court's ruling must be affirmed.

### V.  *Conclusion*

For all the reasons set forth above, the April 27, 1999 Order of the Bankruptcy Court is AFFIRMED.