**In re Angelo SQUILLANTE, Alleged Debtor.**

**No. 00–20814.**

United States Bankruptcy Court, D. Connecticut.

March 1, 2001.

Charles D. Houlihan, Jr., Simsbury, CT, for alleged debtor.

Lawrence B. Pellegrino, Bercham, Moses & Devlin, P.C., Milford, CT, for Wilber National Bank, Petitioning Creditor and Hinman, Howard & Kattell, LLP.

Harvey D. Mervis, Hinman, Howard & Kattell, LLP, c/o Lawrence B. Pellegrino, Bercham, Moses & Devlin, P.C., Milford, CT, for Wilber National Bank, petitioning creditor and Hinman, Howard & Kattell, LLP.

*RULING ON ALLEGED DEBTOR'S
MOTIONS FOR SANCTIONS AND
FOR ATTORNEYS' FEES AND
COSTS*

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

I.

The matters before the court, following the dismissal of an involuntary petition against Angelo Squillante ("Squillante") brought by Wilber National Bank ("the Bank"), are two motions filed by Squillante for (1) sanctions against the Bank and its attorneys, Hinman, Howard & Kattell, LLP ("H, H & K") pursuant to Fed. R.Bank.P. 9011, 28 U.S.C. § 1927, and the court's inherent powers and (2) attorneys' fees and costs against the Bank pursuant to Bankruptcy Code § 303(i)(1). The court held an evidentiary hearing on the motions on December 26, 2000, following which the parties submitted their briefs.[1]

II.

The Bank, on March 24, 2000, filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against Squillante, a Connecticut resident. The court, on May 8, 2000, entered an order for relief when Squillante failed to appear and defend. On July 5, 2000, on Squillante's motion, the court vacated the order for relief. Squillante, on July 19, 2000, moved to dismiss the involuntary petition. The court, after a hearing held on November 3, 2000, on the petition and the motion, dismissed the petition. At the hearing, only witnesses Squillante presented testified, and the court concluded, based upon such testimony, that the Bank's claim against Squillante was the subject of a bona fide dispute.[2] *See* Bankruptcy Code § 303(h) ("the court shall order relief against the debtor in an involuntary case . . ., only if— (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute.").

Squillante filed the instant motions on December 6, 2000, and the court held an evidentiary hearing on December 26, 2000. In his post-hearing papers, Squillante does not press his claim against H, H & K under 28 U.S.C. § 1927. (Squillante Brief at 20 ("[the Bank] and [H, H & K] should be assessed appropriate sanctions pursuant to Rule 9011 or the court's own inherent authority. . . ."))

III.

At the hearing, Squillante introduced into evidence the amount of, and support for, attorneys' fees incurred by him in defending the involuntary petition. Ronald L. Konove, Esq. ("Konove"), an attorney licensed and practicing in New York, submitted a statement for $3,140.00 for his representation of Squillante. In addition, an affidavit of Charles D. Houlihan, Jr., Squillante's Connecticut attorney, supporting legal fees and costs of $7,959.75, was received into evidence without objection.

Konove had testified previously during the hearing on the involuntary petition and the motion to dismiss. He repeated his testimony that, in his opinion, a default judgment against Squillante for $415,819.24 which the Bank had received on October 22, 1999, in the State of New York Supreme Court, County of Otsego, ("the judgment") was void for lack of proper service of the Bank's complaint on Squillante and for failure of the complaint to plead a cause of action against Squillante.

---

1. The court ordered that simultaneous briefs be filed on January 22, 2001, and set January 29, 2001, as the date by which a reply brief may be filed. The Bank filed its opening brief on January 22, 2001. Squillante filed a reply brief on January 29, 2001, and no opening brief.

2. Lawrence B. Pellegrino, Esq., the Bank's Connecticut counsel was present at the hearing.

Harvey D. Mervis ("Mervis"), a member of H, H & K and the Bank's attorney, had overseen the preparation of the involuntary petition and the obtaining of the judgment. He testified at length, both as to why the Bank failed to present witnesses at the hearing on the involuntary petition and the circumstances of the obtaining of the judgment.

Mervis testified that although aware of the hearing date on the involuntary petition, based upon his conversation with the Bank's Connecticut counsel, he misunderstood that an evidentiary hearing on the involuntary petition was going forward on November 3, 2000. He stated New York practice was different. As for the judgment, Mervis introduced into evidence an "Affirmation In Opposition" ("the affirmation"), dated September 4, 1999, (Ex. B), submitted to the New York Supreme Court by Craig R. Fritzsch, Esq. ("Fritzsch"). In the affirmation, Fritzsch averred that he was Squillante's attorney in the matter brought by the Bank, that Squillante opposed the motion for a default because of the failure of the Bank to document Squillante's "personal guaranty of the corporate debt" in the "application for a default judgment." (Ex. B ¶¶ 1, 2). Mervis testified that the New York court overruled Squillante's objection and entered the judgment, based upon affidavits submitted by the Bank indicating Squillante's liability as a guarantor of a loan the Bank had made to a corporation known as F & A Incorporated ("F & A"). (Ex. D, Ex. 6.) Squillante was a fifty-percent owner of F & A's stock.

Mervis stated that no appeal or other legal proceeding was undertaken by Squillante following the entry of the judgment. He asserted that the judgment was and remains valid under New York law, despite Squillante's present claim of invalid service, in light of Fritzsch's appearance as an attorney on behalf of Squillante and Fritzsch's failure to make any such argument to the New York court. Mervis filed an unsuccessful motion in New York to examine Squillante as a judgment debtor and subsequently domesticated the judgment under the Uniform Enforcement of Foreign Judgment Act[3] in Connecticut.

Mervis asserted that the Bank chose to file an involuntary bankruptcy petition against Squillante, based upon its prior receipt of Squillante's "Statement of Financial Condition," dated September 30, 1998, (Ex. E), which disclosed a net worth of $13,727,600, and the Bank's inability to resolve the issue of Squillante's nonpayment of the judgment. None of the documents that Squillante submitted to the Bank indicated he had more than 11 creditors. Mervis, before filing the involuntary petition, had engaged in a joint telephone conference with Squillante and Konove, unsuccessfully seeking information concerning Squillante's apparent loss of assets. Squillante, during the telephone conference, refused to disclose to Mervis the names of his other creditors.

Squillante does not deny that Fritzsch represented him in the New York court proceeding leading to the judgment. He also does not dispute the evidence showing his liability to the Bank as a guarantor of the loans to F & A.

## IV.

Squillante seeks sanctions against the Bank and H, H & K pursuant to Fed. R.Bankr.P. 9011, and the court's inherent powers. "Inasmuch as different sanction mechanisms—such as Fed.R.Civ.P. 11 (and its counterpart in bankruptcy proceedings, Bankruptcy Rule 9011), ... or the court's inherent authority to curtail abusive litigation practices—involve different substantive standards, [the Second Circuit Court of Appeals has] repeatedly required courts to specify the source of their authority to impose sanctions." *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 70 (2d Cir.1996) (citations omitted). The court assumes the opposite is also required—that denial of

---

**3.** Conn.Gen.Stat. § 52–605. (*See* Ex. 6.)

sanctions must be particularly justified. The court, therefore, will separately consider each of the legal bases Squillante relies upon.

## A.

### Fed.R.Bankr.P. 9011

 Fed.R.Bankr.P. 9011[4] "parallels Fed.R.Civ.P. 11, containing only such modifications as are appropriate in bankruptcy matters. Accordingly ... [the] court's application of Rule 9011 is informed by Rule 11 jurisprudence." *Baker v. Latham, Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir.1991). "In order to impose a Rule 9011 sanction, a court must find that an attorney has submitted a claim that has no chance of success under existing precedents and that fails to advance a reasonable argument to extend, modify or reverse the law as it stands." *In re Cohoes*, 931 F.2d at 227.

 Squillante has the burden of proving that the Bank and/or H, H & K filed an involuntary petition that was entirely without merit. *See, e.g. Sherman v. Reilly (In re Reilly)*, 244 B.R. 46, 50 (Bankr. D.Conn.2000). The court finds that, at the time the petition was filed, the Bank and H, H & K had made reasonable inquiry into Squillante's financial affairs and had a colorable argument to support the filing of the involuntary petition—the signed document at issue. The involuntary petition was filed only after the Bank had obtained a judgment on the underlying debt in a New York court, had domesticated that judgment in Connecticut, had unsuccessfully attempted to examine the debtor in accordance with New York law, and had reason to believe that, in the absence of the bankruptcy filing, assets were likely to be dissipated.

 Having already obtained an unappealed judgment on the underlying debt, the Bank and H, H & K had no reason to anticipate any grounds to dispute the judgment. That the Bank failed to present evidence at the November 3, 2000 hearing necessary to satisfy its burden of proof that there was no bona fide dispute does not necessarily imply that its petition was frivolous. In the present proceeding, the burden of proof is on Squillante to prove that the Bank and H, H & K violated Fed.R.Bankr.P. 9011 in filing the involuntary petition.

The court concludes that the Bank and H, H & K made reasonable inquiry into the debtor's financial affairs and that, on the basis of the information available to them at the time, their filing of the petition was not objectively unreasonable, as is re-

4. Fed.R.Bankr.P. 9011 provides, in relevant part:

(b) *Representations to the Court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

quired to support the imposition of sanctions under Fed.R.Bankr.P. 9011.[5] *See Margo v. Weiss,* 213 F.3d 55, 64 (2d Cir. 2000) ("The standard for triggering the award of fees under Rule 11 is objective unreasonableness.").

## B.

### *Inherent Powers of the Court*

■ "[I]t is firmly established that the power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).

■ Sanctions imposed under a court's inherent power—commonly known as the bad faith exception to the "American Rule" against fee shifting—depend not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation.... [The Second Circuit] has always required a particularized showing of bad faith to justify the use of the court's inherent power: [It has] declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts.

*United States v. Int'l Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991); *also see Milltex Industries Corp. v.*

*Jacquard Lace Co., Ltd.,* 55 F.3d 34, 35 (2d Cir.1995) ("Under standards well established by Circuit precedent, [attorney's] conduct must have been 'entirely without color' and motivated by 'improper purposes' to justify the imposition of sanctions" pursuant to the court's inherent powers.) (Citations omitted); *Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir.1986) (similar).

■ In light of the reasons noted in the discussions, *supra* concerning Fed.R.Bankr.P. 9011, the court has concluded that the petition was not filed in bad faith, and an award of sanctions pursuant to the court's inherent powers is not justified.

## V.

### *Bankruptcy Code § 303(i)(1)[6]*

■ A bankruptcy court possesses discretion in awarding costs and attorney's fees to an alleged debtor when the court dismisses an involuntary petition. Bad faith of the petitioning creditor "is not a prerequisite to an award of costs and attorney's fees under § 303(i)(1)." *In re Bayshore Wire Products Corp.,* 209 F.3d 100, 105 (2d Cir.2000). As here, a supplemental evidentiary hearing is held to determine § 303(i)(1) issues after the involuntary petition has been dismissed. *In re Palace Oriental Rugs, Inc.,* 193 B.R. 126, 130 (Bankr.D.Conn.1996). Courts generally hold that the exercise of the court's discretion is based on the totality of the

---

**5.** Several decisions Squillante cites concerned a finding of bad faith where a petitioner actually knew there were more than 12 creditors, yet filed an involuntary petition as the sole petitioner for an improper purpose. *See, e.g. In re Caucus Distributors, Inc.,* 106 B.R. 890, 904 (Bankr.E.D.Va.1989); In re *Atlas Machine and Iron Works, Inc.,* 190 B.R. 796, 801 (Bankr.E.D.Va.1995); *In re Godroy Wholesale Co., Inc.,* 37 B.R. 496 (Bankr.D.Mass.1984) (alleged debtor also disputed existence of alleged debt); *In re Kearney,* 121 B.R. 642, (Bankr.M.D.Fla.1990). Here, in response to the petition, Squillante did not aver the existence of 12 or more creditors and did not file a list of creditors as required under Fed.R.Bankr.P. 1003(b). The court therefore will

not now consider Squillante's untimely arguments that there may be 12 or more creditors.

**6.** 11 U.S.C. § 303(i)(1) provides in relevant part:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs; or

(B) a reasonable attorney's fee;

circumstances; that there is a presumption that costs and attorney's fees will be awarded to the alleged debtor following dismissal of an involuntary petition; and that the burden of proof is on the petitioner to justify a denial of costs and fees. *See, e.g. In re Ross*, 135 B.R. 230, 238 (Bankr.E.D.Pa.1991) ("[O]nce the debtor demonstrates that the involuntary case was dismissed, the burden shifts to the petitioning creditors to present evidence to disallow an award of fees."); *cf. Scrap Metal Buyers of Tampa, Inc.*, 253 B.R. 103, 110 (M.D.Fla.2000) (adopting a rebuttable presumption that fees should be awarded rather than shifting the burden of persuasion).

In this ruling the court will assume that the Bank [7] has the burden of proving, by a preponderance of the evidence, that, under the totality of the circumstances, attorney's fees and costs should not be assessed against it. Consideration of the totality of the circumstances standard "requires an inquiry into: (1) the merits of the involuntary petition, (2) the conduct of the debtor, (3) the reasonableness of the actions taken by the petitioning creditors, and (4) the motivations and objectives behind filing the petition." *Scrap Metal*, 253 B.R. at 110.

With regard to the merits of the underlying petition, the court's decision to dismiss the petition was based on Konove's testimony [8] that the New York judgment was invalid for lack of proper service. Because of a misunderstanding as to the nature of the hearing, the Bank proffered no evidence at the dismissal hearing and, accordingly, the court dismissed the petition. In its brief, the Bank argues that, even if Squillante had not been personally served in the New York action, Fritzsch's appearing on his behalf and having the opportunity to address the merits constituted a waiver of any objection to improper service. *See* David D. Siegel, *New York Practice* § 112 (3d ed. 1999) ("The consequence of the informal appearance is that . . . it is also a waiver of any jurisdictional objection the defendant might otherwise have had."). The court concludes that the Bank had a reasonable basis for its belief, when the petition was filed, that, having obtained a judgment from the New York court, which it subsequently domesticated in Connecticut, it held a claim that was not the subject of a bona fide dispute. The court further notes that Squillante did not attempt to controvert Mervis' testimony as to Fritzsch's appearance on Squillante's behalf and the basis of the indebtedness underlying the judgment. Under these circumstances, the court concludes that the Bank's actions in filing the involuntary petition were both reasonable and properly motivated.

Squillante argues that the Bank should have delved more deeply into his finances and affirmatively ascertained that he had fewer than twelve creditors. As set forth, in note 2, *supra*, the record does not support a finding that Squillante had 12 or more creditors. In addition, Squillante's actions in refusing to supply the Bank with current financial information, including the names of his creditors, undercuts his argument that the Bank acted precipitously in filing the involuntary petition, and he may not now rely on the Bank's lack of such information to justify an award of attorney's fees and costs under § 303(i)(1).

## VI.

### CONCLUSION

In accordance with the findings of fact and conclusions of law set forth in the preceding discussion, the court concludes that Squillante is not entitled to an award of sanctions under either Fed.R.Bankr.P. 9011 or the court's inherent powers and

---

**7.** Section 303(i)(1) permits imposition of fees "against the petitioners and in favor of the debtor" and does not provide for imposition of fees against a petitioner's attorney.

**8.** Konove, apparently, was unaware that Fritzsch, at least informally, had appeared on behalf of Squillante in the New York action.

that he is not entitled to costs or attorney's fees under § 303(i)(1). Squillante's motions are hereby denied. It is

SO ORDERED.